## LANDSDALE *v.* SMITH.

A bill is bad on demurrer when it appears therefrom that there have been unreasonable delay and laches on the part of the complainant, or those under whom he claims, in asserting the rights which he seeks to enforce.

APPEAL from the Supreme Court of the District of Columbia.

By duly recorded deed of July 18, 1818, signed by John P. Van Ness (his wife uniting in the conveyance) and by Noah Stinchcomb, the former conveyed to the latter, at a fixed annual rent, lot 3, square 455, in the city of Washington, to have and to hold, &c., unto Stinchcomb, his executors, administrators, and assigns, for the term of ninety years, renewable forever. Stinchcomb entered under the deed, made valuable improvements upon the lot, and remained in possession until the year 1833 or 1834, when Van Ness repossessed himself of the premises, in virtue of a clause in the deed in these words: "*Provided always*, that if the said rent or any part thereof shall be in arrear and unpaid for the space of thirty days next after the time at which the same is reserved to be paid, as above, being first lawfully demanded, that then it shall and may be lawful to and for the said John, his heirs and assigns, into the demised premises or any part thereof, in the name of the whole, to re-enter, and the same to have again, repossess, occupy, and enjoy, as in his or their former estate, until all such arrearages of rent, with legal interest from the time at which said rent shall have become payable, and all and every cost, charge, and expense incurred by reason of the non-payment of said rent shall be lawfully satisfied and paid, or make distress therefor, at his or their option."

Stinchcomb died on the 11th of February, 1841, without, so far as the bill discloses, making any effort to repossess himself of the property. Van Ness died in 184–, and, upon the division of his estate, the lot in question was assigned to Matilda E. Van Ness, one of his heirs-at-law, under whom and her assigns the defendants hold it.

The complainant, as administratrix of Stinchcomb, having offered, and now offering, to pay all rents, interest, charges, and

costs, which may have accrued upon the property, filed her bill, wherein she asks a decree permitting her to redeem the same, and ordering an account, which will show, as well the principal and interest of rents in arrear due defendants as the rents and profits received by the latter since they entered into possession, setting off the one against the other.

Such is, substantially, the case made, and such the relief asked, notwithstanding forty-five years have elapsed since the re-entry of Van Ness, "as in his . . . . former estate," and more than thirty since his death and the assignment of the lot in question to one of his heirs-at-law.

The court dismissed, on demurrer, the bill, and the complainant appealed here.

*Mr. H. O. Claughton,* with whom were *Mr. C. P. Culver* and *Mr. Thomas Jesup Miller,* for the appellant.

*Mr. Job Barnard* and *Mr. James S. Edwards* for the appellees.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

It has been a recognized doctrine of courts in equity, from the very beginning of their jurisdiction, to withhold relief from those who have delayed for an unreasonable length of time in asserting their claims. *Elmendorf* v. *Taylor,* 10 Wheat. 152; *Piatt* v. *Vattier,* 9 Pet. 405; *Maxwell* v. *Kennedy,* 8 How. 210; *Badger* v. *Badger,* 2 Wall. 87; *Cholmondeley* v. *Clinton,* 2 Jac. & W. 1; 2 Story, Eq. Jur., sect. 1520. In *Wagner* v. *Baird,* 7 How. 234, it was said that long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused except by showing some actual hindrance or impediment, caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the Chancellor.

And, contrary to the view pressed in argument, a defence grounded upon the staleness of the claim asserted, or upon the gross laches of the party asserting it, may be made by demurrer, not, necessarily, by plea or answer. A different rule has been announced by some authors, and in some adjudged cases; generally, however, upon the authority of the case of *The Earl*

*of Deloraine* v. *Browne*, 3 Bro. C. C. 633.   Lord Thurlow, who
decided that case, is reported to have declared, when overrul-
ing a demurrer to a bill charging fraudulent representations as
to the value of an estate, and praying an account of rents,
profits, &c., that his action was based upon the ground that
length of time, *proprio jure*, was no reason for a demurrer ;
that it was only a conclusion from facts, showing acquiescence,
and was not matter of law ; and that he could not allow a
party to avail himself of an inference from facts on a demurrer.
But in *Hovenden* v. *Lord Annesley*, 2 Sch. & Lef. 607, decided
in 1806, Lord Redesdale expressed his disapproval of the deci-
sion of Lord Thurlow, as reported by Brown, and said that it
was rendered in a hurry, when the latter was about to surren-
der the seals, and when much injury might have been done to
parties had judgments not been given before the latter retired
from office.   The rule, as announced in *Hovenden* v. *Lord
Annesley*, was, " that when a party does not by his bill bring
himself within the rule of the court, the other party may by
demurrer demand judgment, whether he ought to be compelled
to answer.   If the case of the plaintiff, as stated in the bill,
will not entitle him to a decree, the judgment of the court may
be required by demurrer, whether the defendant ought to be
compelled to answer the bill."   That, the court said, was
matter of the law of a court of equity, to be determined accord-
ing to its rules and principles.

Such is, undoubtedly, the established doctrine of this court
as announced in many cases.   In *Maxwell* v. *Kennedy*, *supra*,
the court, speaking by Mr. Chief Justice Taney, approved the
rule as announced by Lord Redesdale.   After referring to *Piatt*
v. *Vattier*, *supra*, and to *McKnight* v. *Taylor*, 1 How. 161, and
*Bowman* v. *Wathen*, id. 189, it was said, that " the proper
rule of pleading would seem to be that when the case stated
by the bill appears to be one in which a court of equity will
refuse its aid, the defendant should be permitted to resist it by
demurrer.   And as the laches of the complainant in asserting
his claim is a bar in equity, if that objection is apparent on the
bill itself, there can be no good reason for requiring a plea or
answer to bring it to the notice of the court."   In the more
recent case of *Badger* v. *Badger*, *supra*, the court, speaking by

Mr. Justice Grier, said, that a party, who makes an appeal to the conscience of the Chancellor, "should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the Chancellor may justly refuse to consider his case, on his own showing, without inquiry whether there is a demurrer or formal plea of the Statute of Limitations contained in the answer." p. 95.

These principles are decisive of the case before us. It is plainly one of gross laches on the part of Stinchcomb and those claiming under him. His right under the deed of 1818, to repossess himself of the premises by paying rents and charges in arrear, accrued the moment Van Ness re-entered. But the assertion of it could not be safely neglected for an unreasonable length of time. The bill discloses no plausible, much less sufficient, explanation of the long delay ensuing, after 1833, without an attempt by Stinchcomb, his representatives or his heirs, to recover the property, by discharging the rents and charges in arrear, and re-entering, as might have been done, in pursuance of the provisions of that deed. On the contrary, the facts set out in the bill justify the conclusion either that he elected in his lifetime to abandon his claim, or that it was, in some way, satisfactorily arranged or discharged. The complainant and those whom she represents have slept too long upon their rights. The peace of society and the security of property demand that the presumption of right, arising from a great lapse of time, without the assertion of an adverse claim, should not be disturbed. In such cases, sound discretion requires that the court should withhold relief.

Some reference has been made to the decisions of the Supreme Court of Maryland, the laws of which State, as they existed on the 27th of February, 1801, except as since modified or repealed by Congress, continue in force in this District. It is only necessary to say that the principles to which we have referred have been steadily upheld by that court, not upon the ground of any changes in the law of the State since 1801, but in deference to the established doctrines governing courts of

equity in giving relief to those who seek the enforcement of antiquated demands. *Hepburn's Case*, 3 Bland (Md.), 95; *Hawkins* v. *Chapman*, 36 Md. 83; *Nelson* v. *Hagerstown Bank*, 27 id. 51; *Syester* v. *Brewer*, id. 288; *Frazier* v. *Gelston*, 35 id. 298.

For the reasons given, we are of opinion that the court below properly sustained the demurrer, and dismissed the bill for want of equity.

*Decree affirmed.*