# DOCK & TERMINAL ENGINEERING CO. et al. v. PENNSYLVANIA R. CO.

## No. 5757.

Circuit Court of Appeals, Third Circuit.

Feb. 7, 1936.

Brown & Williams, of Philadelphia, Pa. (William J. Wesseler, of Cleveland, Ohio, and George Rex Frye, of Detroit, Mich., of counsel), for appellants.

Fraley & Paul, of Philadelphia, Pa. (Henry N. Paul and Henry N. Paul, Jr., both of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below suit was entered against the Pennsylvania Railroad Company (hereafter called railroad) by the owners of patent No. 1,089,405 (hereafter called patentees), applied for March 5, 1909, and granted March 10, 1914, to William S. Ferguson, for reinforced concrete dock or pier. The suit was begun March 3, 1931, one week before the expiration of the patent and some twelve years after the alleged infringement by railroad came to the attention of patentees. The railroad defended, inter alia, on the ground of laches of the plaintiff. The court below decided the case on the merits and dismissed the bill on September 29, 1934. Thereupon patentees took this appeal.

We first consider the question of laches on the part of the patentees in failing to seek the aid of a court of equity for

some twelve years after knowledge of railroad's alleged infringement and of its determination to contest the patent. In that respect the proofs show the alleged infringing grain pier was built in 1918–1919 and patentees knew in 1918 of its being constructed and, on request, railroad furnished patentees with copies of plans thereof. On February 14, 1919, patentees wrote railroad alleging infringement, to which railroad replied, April 7, 1920, denying infringement. No further litigation steps were taken by patentees during the eleven intervening years ending March 10, 1931, and it was one week before the patent expired when they brought this suit, but made no effort to secure an injunction. During the interim, railroad had placed on the alleged infringing pier buildings, additions, and betterments costing upwards of a million dollars.

The defense of laches has been fully discussed in this Circuit in Prince's Metallic Paint Co. v. Prince (C.C.A.) 57 F. 938, 944, and in Window Glass Mach. Co. v. Pittsburgh Plate Glass Co. (C.C.A.) 284 F. 645. In the former case it was said:

"In courts of equity the rule is to withhold relief where there has been unreasonable delay in prosecuting a claim, or long acquiescence in the assertion of adverse rights. Creath's Adm'r v. Sims, 5 How. 192 [12 L.Ed. 111]; Godden v. Kimmell, 99 U.S. 201 [25 L.Ed. 431]; Lansdale v. Smith, 106 U.S. 391, 1 S.Ct. 350 [27 L.Ed. 219]. Again and again has it been judicially declared that nothing can call into activity a court of equity but 'conscience, good faith, and reasonable diligence.' McKnight v. Taylor, 1 How. 161 [11 L.Ed. 86]; Sullivan v. Railroad Co., 94 U.S. 806, 812 [24 L.Ed. 324]."

To offset the defense of laches, patentees alleged financial inability, but a study of the testimony satisfies us that patentees' contention in that regard is not substantial. On the contrary, we believe the cause of their bringing suit at the late date they did is due to a latter day change of mind on the subject of infringement, which is admitted in the testimony of one of them who testified:

"My view as to the matter of infringement may have changed since the time of this letter, between 1919, when I first notified the Pennsylvania Railroad of the patent, and the present time."

To the holdings of this Circuit on the subject of laches may be added these cases: Safety Car Heating & Lighting Co. v. Consolidated Car Heating Co. (C.C.A.) 174 F. 658; Dwight & Lloyd Sintering Co. v. Greenawalt (C.C.A.) 27 F.(2d) 823; Mosler & Co. v. Lurie (C.C.A.) 209 F. 364; Vacuum Cleaner Co. v. Innovation Electric Co. (D.C.) 234 F. 942; Pollitzer et al. v. Foster (C.C.A.) 59 F.(2d) 901; Simpson v. Newport News Shipbuilding & Dry Dock Co. (D.C.) 18 F.(2d) 318.

It is also to be noted that at the time this suit was begun some twenty suits were brought against other alleged infringers. While we are not advised as to how long those infringers have infringed, yet the existence of such wide-spread infringements by so many other persons or companies challenged these patentees to assert by suit their rights, if any they had, and their inaction was a tacit consent or acquiescence on their part to these parties as well as to the defendant, to continue their several operations.

So holding, we affirm the decree of the court below dismissing the bill.